JENNER & BLOCK LLP
JULIE A. SHEPARD (SBN 175538)
JShepard@jenner.com
633 West 5th Street Suite 3600
Los Angeles, CA 90071-2054
Telephone: (213) 239-5100
Facsimile: (213) 239-5199

JENNER & BLOCK LLP
HOWARD S. SUSKIN (admitted *pro hac*)
HSuskin@jenner.com
353 N. Clark Street
Chicago, IL 60654
Telephone: (312) 222-9350
Facsimile: (312) 840-7604

JENNER & BLOCK LLP
ANDREW J. LICHTMAN (admitted *pro hac vice*)
ALichtman@jenner.com
OLIVIA G. HOFFMAN (admitted *pro hac vice*)
OHoffman@jenner.com
919 Third Avenue
New York, NY 10022-3908
Telephone: (212) 891-1600
Facsimile: (212) 891-1699

*Attorneys for Defendants Golden Star Resources Ltd., Sam Coetzer, Andrew Wray, Daniel Oweridu, and Andre van Niekerk*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SERGIO GROBLER, Individually and on behalf of all others similarly situated,

Plaintiffs,

v.

GOLDEN STAR RESOURCES LTD., et al.,

Defendants.

Case No. 2:20-cv-3047-PA-MRW

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR OBJECTION TO STIPULATION BETWEEN SERGIO GROBLER AND JAMES F. SCHMIDT**

Defendants respectfully submit this memorandum of points and authorities in support of their Objection to the proposed Stipulation of Plaintiffs Sergio Grobler and James Schmidt ("Stipulation"). As set forth below, the Stipulation contravenes federal law requirements as to how this Court is to determine the appointments of lead plaintiff and lead counsel, and the Stipulation should therefore be rejected.[1]

## I. INTRODUCTION AND FACTUAL BACKGROUND

On April 1, 2020, plaintiff Sergio Grobler ("Grobler"), represented by The Rosen Law Firm, P.A., filed a putative class action lawsuit against Defendants, alleging violations of Sections 10(b) and 20(a) of the Securities Act of 1934, and seeking to represent a class consisting of "all persons other than defendants who acquired Golden Star securities publicly traded on NYSE American during the Class Period [*i.e.*, from February 20, 2019 through July 30, 2019], and who were damaged thereby." Dkt. 1 ("Grobler Compl.") ¶ 54.[2] On May 27, 2020, plaintiff James F. Schmidt ("Schmidt"), represented by Pomerantz LLP, filed a substantially identical putative class action complaint against Defendants and sought to represent an identical class. *Schmidt v. Golden Star Resources Ltd. et al.*, 2:20-cv-04701-PA-MRW, Dkt. 1 ("Schmidt Compl."). Both cases are governed by the Private Securities Law Reform Act ("PSLRA"), which sets forth the procedural rules for this Court's oversight of putative class actions that assert Section 10(b) claims.

On June 1, 2020, Grobler and Schmidt (sometimes collectively referred to as "Plaintiffs") each filed competing motions seeking to be appointed lead plaintiff and seeking that their respective law firms be appointed lead counsel. Dkt. 22 and 23 (Grobler), Dkt. 26 and 27 (Schmidt). In their separate filings, Grobler and Schmidt

[1] Defendants' objection to the Stipulation is directed at Plaintiffs' proposal for multiple sets of lead plaintiffs and lead counsel. Defendants do not object to the portion of the proposed Stipulation requesting that the two cases be consolidated.

[2] References to "Dkt." refer to entries on the docket for this case, *Grobler v. Golden Star Resources Ltd et al.*, 2:20-cv-03047-PA-MRW (C.D. Cal.) unless otherwise noted.

each argued that he and his counsel were uniquely qualified to represent the putative class. Grobler asserted that his chosen counsel, The Rosen Law Firm, "has been actively researching" the claims, is "experienced in the area of securities litigation," and has "obtained substantial recoveries on behalf of investors" in prior cases. Dkt. 23 at 8. He further asserted that his counsel "has the skill and knowledge that will enable the firm to prosecute this action effectively and expeditiously" and would provide the class with "the best legal representation available." *Id.* Grobler also contended that he had sustained the largest loss of any shareholder seeking lead plaintiff appointment. *Id.* at 6.

For his part, Schmidt similarly argued that his counsel, Pomerantz, "has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors" and "recently secured a recovery of $3 billion on behalf of investors." Dkt. 27 at 12. Thus, according to Schmidt, "the members of the class will receive the best legal representation available" if Pomerantz is approved as lead counsel. *Id.* at 13. Schmidt also contended that his financial losses were the largest of any applicant for lead plaintiff appointment. *Id.* at 2.

In neither submission did Grobler or Schmidt indicate that he or his counsel lacked the capability to adequately represent the putative class on their own. *See* Dkt. 23, Dkt. 27. Nor did they identify any conflict among the putative class members that required additional representation or subclasses to be represented separately by two different lead plaintiffs and lead counsel. *See* Dkt. 23, Dkt. 27.

Nine days later, on June 10, 2020, Grobler and Schmidt reversed course, filing a proposed Stipulation requesting that both of them and both their counsel be appointed co-lead plaintiffs and co-lead counsel. Dkt. 31. They gave no reason for their change in positions or why this case requires multiple co-lead plaintiffs and co-lead counsel, nor did they offer any explanation as to how their proposal comports with the PSLRA's standard for appointing lead plaintiff and lead counsel.

The day after Grobler and Schmidt filed their proposed Stipulation, Defendants filed a preliminary response, requesting that the Court refrain from taking immediate action with respect to the proposed Stipulation to permit Defendants an opportunity to determine whether they object to the terms set forth therein. Dkt. 33. Thereafter, on June 15, 2020, Defendants filed a notice of objection to the proposed Stipulation on the ground that it violates the PSLRA, and sought leave to file this memorandum in support of their objection. Dkt. 34. On June 16, 2020, before Defendants had the opportunity to file this memorandum, Grobler and Schmidt filed a response seeking to deny Defendants the opportunity to explain their objection, accusing Defendants of trying to "torpedo[]" the litigation, incorrectly arguing that Defendants do not have standing to object, and asserting other misleading arguments. Dkt. 35 at 2.

To be clear, contrary to Plaintiffs' assertion, Dkt. 35 at 2, Defendants express no view whatsoever as to which Plaintiff should be appointed as lead plaintiff or which law firm should be appointed as lead counsel. Nor do Defendants seek to "disqualify" both plaintiffs and law firms, as Plaintiffs assert. Dkt. 35 at 2. Defendants simply request that the protocols of the PSLRA be followed, which requires here that a single lead plaintiff and a single lead counsel be appointed.[3]

As set forth below, because the arrangement Grobler and Schmidt propose in the Stipulation contravenes the PSLRA's standards for appointing lead plaintiff and lead counsel, as other courts in this Circuit have found, the Stipulation should be rejected.

\\

\\

\\

[3] Defendants reserve any challenge to the adequacy of whichever lead plaintiff is selected until the class certification stage, if this case gets that far, after class discovery has been taken.

## II. ARGUMENT

The PSLRA was enacted by Congress to curb perceived abuses in the litigation process, particularly the widespread initiation and manipulation of securities class actions by "professional" plaintiffs and lawyers that "researched potential targets for these suits, enlisted plaintiffs, controlled the course of the litigation, and often negotiated settlements that resulted in huge profits for the law firms with only marginal recovery for the shareholders." *Gluck v. CellStar Corp.*, 976 F. Supp. 542, 544 (N.D. Tex. 1997), citing S. Rep. No. 104-98 at 687 (1995). To address these concerns, Congress did not leave it up to coalitions of plaintiffs and their counsel to bargain among themselves as to who would be lead plaintiff and who would be lead counsel. Instead, Congress established a presumption, through the PSLRA, that among the parties seeking to lead the class, the persons or group of persons with "the largest financial interest in the relief sought by the class" is the most adequate plaintiff to do so. 15 U.S.C. Section 78u-4(a)(3)(B)(iii)(I).[4] The plaintiff appointed as lead plaintiff then selects counsel to represent the class. 15 U.S.C. Section 78u-4(a)(3)(B)(v). The assumption underlying the PSLRA's protocols for the Court to follow is that the plaintiff with the strongest financial interest will pursue the claims with the greatest vigor and will have both the interest and the clout to engage qualified counsel at the best rates for the class. Enabling further oversight by the Court, the PSLRA provides that the lead plaintiff presumption is rebuttable, 15 U.S.C. Section 78u-4(a)(3)(B)(iii)(II), and that party's selection of counsel is subject to court approval. 15 U.S.C. Section 78u-4(a)(3)(B)(v).

---

[4] The lead plaintiff must be an individual person or entity, or at most, a close-knit "group of persons" that "share such an identity of characteristics, distinct from those of almost all other class members, that they can almost be seen as being the same person." *Aronson v. McKesson HBOC, Inc.*, 79 F. Supp. 2d 1146, 1153–54 (N.D. Cal. 1999).

Here, after initially competing for the roles of lead plaintiff and lead counsel through separate motions, as the PSLRA requires, Grobler and Schmidt reversed course and submitted a Stipulation proposing their appointment as co-lead plaintiffs and further proposing that their respective law firms be appointed co-lead counsel. Dkt. 31 at 4. While Defendants take no position on the issue of which party should be appointed lead plaintiff and which counsel should be appointed lead counsel, Defendants do submit that appointing *both* Grobler and Schmidt as co-lead plaintiffs, and *both* sets of their lawyers as co-lead counsel, would be contrary to the selection process set forth in the PSLRA and would undermine the statute's purpose. Further, double sets of lead plaintiff and lead counsel will prejudice Defendants through unnecessary duplication of efforts and costs during the course of the litigation, and that prejudice confers standing upon Defendants to request that the protocols set forth in the PSLRA for this Court to follow be complied with.[5]

Notably, Plaintiffs have not articulated, let alone demonstrated, any reason to depart from the selection process prescribed by the PSLRA, which provides that the plaintiff with the largest financial stake presumptively should be selected lead plaintiff—not a selection process that simply permits every plaintiff that filed a complaint to be named a co-lead plaintiff as well. Increasing the number of lead plaintiffs, as the Stipulation proposes, detracts from the fundamental goal of client control, reduces the responsibility of the lead plaintiff, and, to defendants' detriment,

[5] Contrary to Plaintiffs' assertion, courts have recognized that Defendants do have standing to object to the appointment of a lead plaintiff in these circumstances. *King v. Livent, Inc.*, 36 F. Supp. 2d 187, 190 (S.D.N.Y. 1999); *see also In re Sonus Networks, Inc. Sec. Litig.*, 247 F.R.D. 244, 247 n.3 (D. Mass. 2007) ("defendants must speak up at the lead plaintiff appointment stage or risk being deemed later to have waived adequacy arguments regarding which they were then aware"). Nothing in the text of the PSLRA precludes or limits the right of defendants to be heard at this stage, and permitting defendants to make a limited facial challenge to a motion for appointment of lead plaintiff does not disrupt the statutory framework. *King*, 36 F. Supp. 2d at 190. Here, Defendants simply are seeking to *enforce* the statutory framework without expressing any view as to which plaintiff or law firm should be selected as lead plaintiff and lead counsel.

increases the time and expense of preparing and litigating the case, especially here, where plaintiffs propose retaining co-lead counsel. *Gluck*, 976 F. Supp. at 549.

Recognizing these concerns, other courts in this Circuit have rejected proposals similar to that advocated by Plaintiffs here. For example, in *In re Advanced Tissue Sciences Securities Litigation*, the court considered and rejected a proposed co-leadership structure, finding that appointing co-lead plaintiffs and co-lead counsel would unnecessarily increase the litigation's time and expense. 184 F.R.D. 346, 351–52 (S.D. Cal. 1998). Likewise, in *Reiger v. Altris Software Inc.*, the court rejected a similar arrangement, again noting the unnecessary increase in expense. No. 98-cv-0528J (JFS), 1998 WL 1986953., at *6 (S.D. Cal. Sept. 11, 1998).

Here, Grobler and Schmidt are represented by The Rosen Law Firm and Pomerantz, respectively, and seek this Court's approval of both firms to serve as co-lead counsel. Dkt. 31 at 4. Appointing two co-lead counsel to represent two co-lead plaintiffs, as the Stipulation requests, will result unnecessarily in duplicative costs and fees at each stage of this litigation—fees that Plaintiffs ultimately will seek to claim from Defendants, as their Complaints request. Grobler Compl. at 22 (Prayer for Relief, ¶ b); Schmidt Compl. at 26 (Prayer for Relief, ¶ C). As noted above, neither law firm contends that it is incapable of independently representing the putative class or that it lacks sufficient resources to advance the costs and expenses of litigation.[6] Moreover, neither Grobler nor Schmidt identifies any conflict among the putative class members that warrants subclasses represented by separate co-lead counsel. Accordingly, no reason exists to depart from the PSLRA's normal selection process.

---

[6] In fact, over the years Defendants' counsel, Jenner & Block, has litigated securities class actions in which either The Rosen Law Firm or Pomerantz were the sole lead counsel. *See, e.g.*, *In re Groupon Securities Litigation*, No. 12-CV-2450 (N.D. Ill.)(Pomerantz appointed as sole lead counsel); *Brown v. Innerworkings*, No. 8:2018-CV-00832 (C.D. Cal.)(The Rosen Law Firm appointed as sole lead counsel).

## III. CONCLUSION

For the foregoing reasons, Plaintiffs' Stipulation seeking to circumvent the lead plaintiff and lead counsel selection process set forth in the PSLRA should be rejected. Defendants respectfully request that the Court conduct the prescribed selection process from among the competing applicants and select a single lead plaintiff and a single lead counsel as the PSLRA requires in these circumstances.

Dated: June 17, 2020

JENNER & BLOCK LLP

By: */s/ Julie Shepard*
Julie Shepard

*Attorneys for Defendants*